UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NIPPON YUSEN KAISHA a.k.a. NYK LINE,                ECF CASE

                Plaintiff,                                         08 CV 3160 (GEL) (THK)

     — against —

CHARLOTTE INTERNATIONAL INC. and
NN SAFEWAY SHIPPING CO.,

                Defendants.
-----------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF CHARLOTTE INTERNATIONAL INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

FENSTERSTOCK & PARTNERS LLP
BLAIR C. FENSTERSTOCK
JEANNE M. VALENTINE
30 WALL STREET
NEW YORK, NY 10005
(212) 785-4100

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    The Complaint Must Be Dismissed Because There Is No Basis For
              In-personam, In-rem Or Quasi In-rem Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . 2

        B.    The Complaint Must Be Dismissed Because NYK Did Not
              Comply With Rule E Of The Supplemental Rules For Certain
              Admiralty And Maritime Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.    NYK's Reliance On The Cases Cited In Its Opposition Papers
              Is Misplaced.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Amoco Overseas Oil Co. v. Compangnie Nationale Algerienne de Navigation,*
    605 F.2d 648 (2d Cir. 1979) .................................................. 7, 8

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
    460 F.3d 434 (2d Cir. 2006) ................................................ *passim*

*Dolco Inv., Ltd. v. Moonriver Dev., Ltd.,*
    486 F. Supp. 2d 261 (S.D.N.Y. 2007) .......................................... 5, 6

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ......................................................... 2, 4

*Korea Exp. USA Inc. v. K.K.D. Imp., Inc.,*
    103 F. Supp. 2d 682 (S.D.N.Y. 2000) ........................................... 6-7

*Shaffer v. Heitner,*
    433 U.S. 186, 97 S.Ct. 2569 (1977) ............................................. 7

## FEDERAL STATUTES

Fed. R. Civ. P. Supp. Rule E(2)(a) ................................................. 5

Fed. R. Civ. P. 12(b)(2) and (3) .................................................. 10

## I. INTRODUCTION

The arguments Nippon Yusen Kaisha, a.k.a. NYK Line ("NYK") has presented in its Opposition to Defendant Charlotte International Inc.'s ("Charlotte") Motion to Dismiss the Verified Complaint (the "Complaint"), fail to provide any support for this Court to exercise jurisdiction over Charlotte. To the contrary, NYK's Opposition papers reaffirm that Charlotte did not maintain any contacts, whether general or specific, with the state of New York at the time either the Complaint was filed or the Order of Attachment (the "Order") was issued. In fact, by NYK's own admission, Charlotte did not have any "property" in the state of New York, even in the form of electronic fund transfers ("ETF") for quasi-in-rem purposes, until well *after*: (1) the Verified Complaint was filed; (2) the Order was issued; and (3) the Order of Attachment was served on certain New York banks.

Although maritime attachment proceedings pursuant to Supplemental Admirably Rule B are available in instances where a defendant is not subject to jurisdiction, as NYK admits in its papers, there must nevertheless exist property that is capable of being attached within the forum state. In this respect, even if EFT's are considered sufficient for quasi-in-rem jurisdiction, there was no allegation either in the Complaint or in the Order that Charlotte maintained such property in New York, which, in fact, it did not. Thus, not only was the sufficiency of NYK's Complaint deficient, but so was its request for an Order of Attachment.

NYK's bringing this case in a New York court is a blatant attempt at forum shopping. To allow it to proceed would set a dangerous precedent. Under the argument advanced by NYK, a court could exercise its personal jurisdiction over an out-of-state defendant who does not have any contacts whatsoever with the forum state at the time an action is commenced – whether in-personam, in-rem, or even quasi-in-rem – and who may continue to be subject to that court's jurisdiction for

1

an indefinite period of time *after* the commencement of an action even though the defendant maintains no contacts or property in the jurisdiction. In this context, a plaintiff would be permitted to hail a foreign defendant into a jurisdiction on an unsubstantiated allegation that some future event, namely an EFT passing through the forum state, would eventually provide the basis for personal jurisdiction, notwithstanding the fact that at the time the action was commenced, there was no such basis for jurisdiction. This form of jurisdictional "ransom" would enable a plaintiff to wage a pre-emptive war against an out-of-state defendant who otherwise would not be subject to personal jurisdiction under a traditional jurisdictional analysis. This scenario unfairly burdens a foreign defendant, such as Charlotte, and does not, and cannot, comport with the traditional notions of "fair play and substantial justice" as enunciated by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

## II.   ARGUMENT

**A.   The Complaint Must Be Dismissed Because There Is No Basis For In-personam, In-rem Or Quasi In-rem Jurisdiction.**

NYK's claim should be dismissed because the attached property was not "found" within the district, making the attachment improper and ultimately negating any appropriate basis for in-rem, or even quasi in-rem, jurisdiction over Charlotte. The Second Circuit in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.* found that electronic fund transfers could be attachable in admiralty cases. 460 F.3d 434, 436 (2d Cir. 2006). However, the practice of maritime attachment arose because "it is frequently [...] more difficult to find property of parties to a maritime dispute [...so the Court permits] the attachments of assets *wherever they can be found.*" *Id.* at 443 (emphasis added). The Second Circuit specifically stated that, despite the fact that the defendant in *Aqua Stoli* was not

"found" within the district, attachment was proper because the defendant's "assets [were] *presently located* in the Southern District." *Id.* at 444 (emphasis added). Further, the court stated that a plaintiff may "seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down." *Id.* at 443.

Applying the reasoning of *Aqua Stoli* to the present case, this case must be dismissed. The Order issued by this Court sought an attachment of EFTs that were not yet "found" within the district at the time the Order was issued. NYK sought to obtain an attachment on March 31, 2008, which was granted by the Court on April 9, 2008. *See* Declaration of Joseph De May, Jr. ("De May Decl."), Exhibit C. However, it was not until April 28, 2008 – almost three weeks after this Court granted the order, and nearly a month after NYK filed its Complaint – when an EFT for Charlotte actually passed through a bank in New York. *See* De May Decl., Exhibit D. This demonstrates that at the time of attachment, not only was Charlotte not "found" within the district, but neither was its *property* "found" within the district, thus eliminating any valid basis for attachment, and subsequently, in-rem jurisdiction. Simply put, Charlotte did not have any property that was "presently located" in the district, as required by *Aqua Stoli*. *Id.* at 444. At the time this suit was commenced, there was no property "presently located" in this district.

Because Charlotte's property was not "found" within the district until nearly three weeks after the Order was granted, NYK seemingly wishes to assert jurisdiction after the fact. Looking to the purpose of maritime attachment – to allow the plaintiff to easily locate a place to sue the defendant – the present attachment conflicts with that purpose. *Id.* at 443. Charlotte's property was not found in the district at the time of attachment, nor was there any indication that its property

3

would *ever* be found in the district. Indeed, an indefinite amount of time could have elapsed until a single EFT passed through a New York bank. NYK, in filing its Complaint in New York, was taking a "shot in the dark," hoping to take advantage of the Second Circuit's holding in *Aqua Stoli* which permitted jurisdiction based on EFTs passing through the forum state. NYK anticipated that some property, *any* property, of Charlotte's might eventually be found within the district, regardless of the fact that it was not found in the district at the time it filed the Complaint. This logic does not comport with the purpose of maritime attachment - namely, to hail into a jurisdiction a defendant who is otherwise difficult to locate. Rather, this action merely creates a waiting game wherein the plaintiff, defendant, and the court wait for property, any property, to pass through the forum state. Indeed, in this case, it could have taken months, or even years, for an EFT to pass through New York state.

Further, it is important to point out that this waiting game does not comport with any notion of due process or fair play. Subjecting Charlotte to quasi in-rem jurisdiction based on a *possibility* of property being "found" in the forum state at some indeterminate time in the future does not comport with ideals of constitutionality and offends "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. For this Court to allow such a basis for jurisdiction would be to subject a defendant, who does not purposely avail himself in *any way* of the laws of a state, to be subject to jurisdiction indefinitely and unreasonably, when there is an alternate jurisdiction – in this case, Virginia – where a suit could have been brought. To allow a plaintiff to preemptively attach property – before the property even exists in the forum state, and where it may never exist – in the hopes that some kind of property will one day in the indeterminate future pass

through the jurisdiction cannot, and does not, comport with notions of due process. Accordingly, Charlotte's motion to dismiss the Complaint should be granted due to lack of in-rem jurisdiction.

B.  **The Complaint Must Be Dismissed Because NYK Did Not Comply With Rule E Of The Supplemental Rules For Certain Admiralty And Maritime Claims.**

NYK failed to establish, or even allege, any facts, in its Complaint that support jurisdiction based on the attachment of funds that may pass through certain New York banks. The Second Circuit has clearly held in *Aqua Stoli* that a plaintiff *must* comply with the filing and service requirements laid out in Rules B and E of the Supplemental Rules in order for attachment to be proper. 460 F.3d at 445. Rule E(2)(a) of the Supplemental Rules states that the:

> Complaint should state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Should a plaintiff fail to comply with Rule E(2)(a), as NYK has in the present case, then "the district court *must* vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Aqua Stoli*, 460 F.3d at 445 (emphasis added).

Pursuant to Rule E(2)(a), the complaint must include the facts that purportedly gave rise to the cause of action. In *Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, for example, the court found the allegations set forth in the plaintiff's complaint to be insufficient to fulfill the heightened burden of proof, and vacated the attachment accordingly. 486 F. Supp. 2d 261, 272-73 (S.D.N.Y. 2007). In *Dolco Inv.*, the plaintiff's complaint "point[ed] only to two instances where [the Defendant] made payments . . . but [made] no allegation of intermingling of funds, nor any other factor relevant to the inquiry." *Id.* at 273. Thus, the Court concluded that "under the heightened standard of Fed. R. Civ.

P. Supp. Rule E(2)(a), more is required" than these two instances and a conclusory allegation made without the proper foundation on which to base such a claim. *Id.* at 272.

Similarly, NYK's Complaint in this case fails to comply with Rule E(2)(a)'s requirement of particularity. Indeed, NYK's Complaint alleges virtually no facts about the alleged breach, with the exception of stating an estimate for monetary damages stemming from a vague breach of the maritime contract. NYK fails to establish any basis of fact for its claims, alleging even fewer relevant facts than the plaintiff did in *Dolco Inv.* NYK merely states a – seemingly arbitrary – figure representing its damages, without alleging, among other facts: (1) what led to such damages; (2) the details concerning the formation of the contract; (3) the details concerning the transaction; (4) what transpired when the cargo was shipped to the purchaser; (5) whether the purchaser even took possession of the cargo; (7) whether NYK still maintains possession and control of the cargo; or (8) whether the cargo was auctioned to satisfy the outstanding shipping charges allegedly due and owing to NYK. Indeed, NYK fails to present *any* facts that, even taken in the most favorable light, entitle NYK to relief. NYK did not lay any foundation based in fact that would support recovering damages from Charlotte, or that permit this Court to exercise jurisdiction over Charlotte. The glaring absence of fact is a clear perversion of the particularity requirement set forth in Rule E(2)(a). Consequently, because the basis for the attachment is invalid, the basis for in-rem jurisdiction is likewise unsupported, and as such, the Complaint must be dismissed.

C. **NYK's Reliance On The Cases Cited In Its Opposition Papers Is Misplaced.**

NYK relies on several cases to support its opposition to Charlotte's Motion to Dismiss. However, nearly all of these cases are inapposite to its claim. To support the idea that NYK's claim is maritime in nature, Plaintiff cites only one case, *Korea Exp. USA Inc. v. K.K.D. Imp., Inc.*, 103

F. Supp. 2d 682, 686 (S.D.N.Y. 2000), in which freight charges were in dispute. Plaintiff's Opp., at ¶ 2. In *Korea Exp.*, the court found that the recovery of unpaid freight charges was an admiralty claim. 103 F. Supp. 2d at 686. However, a significant difference between *Korea Exp.* and the present case is that unlike in this case, the defendant in *Korea Exp.* actually took possession of rights to the cargo for which freight charges were unpaid. *Id.* Not only did the defendant, a bank, obtain the rights to the cargo, but such a right was included and specifically contracted for between the bank and K.K.D. Imports, Inc. *Id.* This substantially differs from the case at hand, because Charlotte did not, in any way, assume the risk of the cargo in the contract, except for the provision in the contract that it may pay the deficit should NYK mitigate its damages through the sale of the cargo and still lack full compensation. Not only did Charlotte have no contractual assumption of this duty, but Charlotte had no legal title or interest in the cargo, unlike the bank in *Korea Exp.* Nevertheless, NYK still failed to allege *any* facts in its Complaint that would justify its claim, including the integral facts concerning the whereabouts and status of the cargo.

NYK also relies on *Amoco Overseas Oil Co. v. Compangnie Nationale Algerienne de Navigation,* 605 F.2d 648, 654 (2d Cir. 1979), to support its claim that attaching the property of Charlotte submits Charlotte to quasi in-rem jurisdiction. Plaintiff's Opp., at ¶ 5. Notwithstanding the fact that the attachment of the property was improper in the first place, as discussed above, *Amoco* is inapposite to the present case. In *Amoco*, the "fair play test," laid out in the landmark case *Shaffer v. Heitner,* 433 U.S. 186, 97 S. Ct. 2569 (1977), did not apply because the property attached was directly related to the maritime controversy. *Id.* at 655. *Shaffer* redefined obtaining personal jurisdiction and the notions of due process, by asserting that "the test of 'fair play and substantial justice' that governs in personal jurisdiction controls in-rem jurisdiction as well." *Id.* In *Amoco,* the

court found that *Shaffer* did not apply for three reasons: (1) the attached property directly related to the plaintiff's claim; (2) jurisdiction in the United States over the defendant was questionable, so it served as "jurisdiction by necessity;" and (3) *Shaffer* did not contemplate admiralty proceedings, and "maritime actors must reasonably expect to be sued where their property may be found." *Id.*

Taking the first reason, it is unclear if the property attached in this case (aside from being improperly attached altogether) had anything to do with the underlying controversy. The fact that the EFT was not even present in the district at the time of attachment, and was sent almost 17 months after the date of the bill of lading (*See* Complaint, at ¶ 2), supports the idea that the funds did not relate to the shipment of the cargo related to the instant dispute between the parties. Second, unlike *Amoco* where the defendant was not subject to jurisdiction in *any* district, here, Charlotte is incorporated in the state of Virginia and thus subject to its laws and jurisdiction. Further, the court in *Amoco* stated that "maritime actors must *reasonably expect* to be sued where their property may be *found*." 605 F.2d at 655 (emphasis added). In this case, however, Charlotte has: (1) absolutely no contacts in New York; (2) transacts no business in New York; (3) owns no property in New York; (4) has no bank accounts in New York; and (5) has not availed itself of the laws or benefits of New York. As a result, Charlotte has absolutely no basis to reasonably expect to be sued in New York.

Lastly, the inner workings of EFTs are not common knowledge; the reasonable person who possesses a bank account in Virginia likely has little understanding that funds sent from a foreign country pass through a New York bank prior to being deposited in a local bank account. Thus, not only was Charlotte's property not "found" within the district at the time of attachment, but also, Charlotte had no rational grounds to expect that its property could *ever* be reasonably "found" in New York because it did not open or maintain any bank accounts in New York.

NYK's reliance on the Second Circuit's decision in *Aqua Stoli* is misplaced. In *Aqua Stoli*, the defendant was explicitly *asked* to post security voluntarily for the claim, to which the defendant refused. 460 F.3d at 435. After the defendant's refusal to post security, Aqua Stoli sought the attachment. *Id.* Here, NYK never requested that Charlotte post security, and indeed, while doing so is not required, it would have, at the very least, placed Charlotte on notice that its property could be subject to attachment. Because there are no relevant facts regarding the controversy alleged in NYK's Complaint, it is completely unclear as to why Charlotte is being sued in New York. Indeed, given the vagueness of the Complaint, there was no way for Charlotte to expect to be sued at *all*, let alone in New York, or to have its property attached.

Additionally, the court in *Aqua Stoli* found that the defendant's bank transfers were attachable because they were "presently located in the Southern District." *Id.* at 444. As discussed previously, the attached EFTs directed at Charlotte were not in the district at the time NYK: (1) filed its Complaint; (2) requested the attachment; (3) was granted the attachment; or (4) served the notice of the Order on the various New York banks. In fact, the EFT did not pass through Citibank until April 28, 2008, well after the attachment. *See* De May Decl., Exhibit D. As a result, because the attachment is invalid, there is no basis for in-rem jurisdiction, and NYK's Complaint must be dismissed.

### III.   CONCLUSION

For the reasons stated above, as well as in its Memorandum of Law in Support of its Motion to Dismiss NYK's Complaint for Lack of Personal Jurisdiction and Improper Venue, Charlotte respectfully requests that the Court dismiss the Verified Complaint under Fed. R. Civ. P. 12(b)(2) and (3).

Dated: New York, New York
July 2, 2008

                                      FENSTERSTOCK & PARTNERS LLP

By: _____
      Blair C. Fensterstock (BF-2020)
      Jeanne M. Valentine (JV-3144)

      30 Wall Street, 9th Floor
      New York, New York 10005
      (212) 785-4100

      *Attorneys for Defendant Charlotte International Inc.*